1        IN THE UNITED STATES DISTRICT COURT, MIDDLE DISTRICT

2            OF FLORIDA, JACKSONVILLE DIVISION

FILED

2003 JUL 3 1 A 8:44

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

3

4

5

6   UNITED STATES OF AMERICA,        Jacksonville, Florida

7            Plaintiff,             Case No. 3:02-cr-233(S1)-J-32

8       -vs-                        May 29, 2003

9   ALGIE MOORE,                    2:18 P.M.

10           Defendant.             Courtroom 10 B

11

12

13

14           TRANSCRIPT OF SENTENCING HEARING

15       BEFORE THE HONORABLE TIMOTHY J. CORRIGAN

16           UNITED STATES DISTRICT JUDGE

17

18

19  GOVERNMENT COUNSEL:

20

21       FRANK TALBOT,

22       Assistant United States Attorney

23       600 N. Hogan Street, Suite 700

24       Jacksonville, Florida  32202

25



```
 1

 2   DEFENSE COUNSEL:

 3

 4         DAVID MAKOFKA

 5         Makofka & Makofka

 6         Suite 402

 7         24 N. Market Street

 8         Jacksonville, Florida   32202

 9

10

11   ALSO PRESENT:

12         FRED FORTENBERRY, U.S. Probation Officer

13

14

15

16

17   Court Reporter:

18         L. Marie Splane, RDR, CRR

19         P.O. Box 1196

20         Jacksonville, Florida   32201

21         Telephone:  (904) 549-1310  Fax:  (904) 356-6452

22         Internet:  msplane@earthlink.net

23

24   (Proceedings reported by microprocessor stenography;

25   transcript produced by computer.)
```

1     THE MARSHAL:  All rise.  This Honorable Court is

2  now in session.  Be seated, please.                          14:17

3     (Defendant present.)

4     THE COURT:  This is the case of United States of

5  America versus Algie Moore, 3:02-cr-2-J-32TEM.  Mr. Talbot   14:18

6  represents the government; Mr. Makofka represents Mr. Moore,

7  who is present in the courtroom.

8     We're here today for Mr. Moore's sentencing

9  hearing.  In preparation for that hearing, I have reviewed

10 in its entirety the presentence investigation report.  I've   14:18

11 also reviewed the government's information, which

12 established a prior conviction, document 22, under 21 USC

13 Section 851(a)(1).  I have also reviewed substantial

14 portions of the file.  I have carefully reviewed the

15 guidelines and the statutes which make up the calculus of    14:19

16 the court's decision-making.  In addition, of course, I was

17 present at the trial and presided over it and am familiar

18 with what occurred at trial.  I've also reviewed the jury's

19 verdict again and portions of the court's jury instructions

20 and other portions of the trial record to refresh myself    14:19

21 about this matter.

22    I'll start by asking you, Mr. Talbot, whether

23 you've reviewed the PSI in its entirety and whether the

24 government has any objections to the presentence report or

25 the application of the guidelines.                           14:19

1          MR. TALBOT:  I have reviewed the presentence

2   report and I have no objections or corrections to it or the

3   guideline application.                                                          14:19

4          THE COURT:  Mr. Makofka, have you read the report

5   in its entirety?                                                                14:20

6          MR. MAKOFKA:  I have, Your Honor.

7          THE COURT:  Do you have any objections to the

8   report or to the application of the guidelines in the

9   report?

10          MR. MAKOFKA:  No, Your Honor.                                           14:20

11          THE COURT:  Mr. Moore, have you either read the

12   report yourself or have you gone over it with Mr. Makofka?

13          DEFENDANT MOORE:  Yes, sir.

14          THE COURT:  What did you -- did you read it or did

15   you go over it with him?                                                       14:20

16          DEFENDANT MOORE:  I read it and went over it with

17   him, sir.

18          THE COURT:  Did you go over it in detail?

19          DEFENDANT MOORE:  Yes, sir.

20          THE COURT:  And did you have any objections, or                        14:20

21   was there anything in there that you didn't think was

22   correct?

23          DEFENDANT MOORE:  Yeah, the sentencing and the

24   guidelines.  That's it, sir.

25          THE COURT:  The sentencing guidelines?                                 14:20

1       DEFENDANT MOORE:  Yes, sir.                    14:20

2       THE COURT:  Meaning that you don't think that the

3  numbers are right?

4       DEFENDANT MOORE:  Yes, sir.

5       THE COURT:  Okay.  And are you saying that just    14:20

6  because it's such a long sentence, or are you saying that

7  you have some reason for saying it wasn't done correctly?

8       DEFENDANT MOORE:  Both, sir.

9       THE COURT:  All right.  The first part I can

10 understand if you think it's a long sentence, because it    14:21

11 certainly is, but that's not something that we can really

12 deal with.  But the second part, if there's something about

13 the application or the way the guidelines were calculated or

14 something that there's an error there, you know, I'm happy

15 to hear from you about that.  What are you specifically    14:21

16 talking about?

17      DEFENDANT MOORE:  About past charges as far as

18 juvenile charges, any charges that's present now what

19 supposed to have got me here in sentencing.

20      THE COURT:  Are you saying that -- are you saying    14:21

21 that the charges that are being used to name you as a career

22 offender?

23      DEFENDANT MOORE:  Yes, sir.

24      THE COURT:  Are you saying -- I know they were

25 committed before you turned 18, is that right, some of them    14:21

1   were anyway, right?                                              14:21

2           DEFENDANT MOORE:  I don't quite understand where

3   you coming from.

4           THE COURT:  Well, are you saying that those were

5   juvenile charges?                                                14:22

6           DEFENDANT MOORE:  Yes, sir.

7           THE COURT:  And why are you saying that?

8           DEFENDANT MOORE:  Because they are -- resisting

9   arrest without violence happened on 8/4/98; I was 17 years

10  old.  Resisting arrest without violence, I got one point for    14:22

11  that right there.

12          Four/23/99 possession of crack cocaine, possession

13  of less than 20 grams of marijuana, Duval County.  So I got

14  three points for that there.

15          THE COURT:  Wait, wait, wait.  Are you saying that       14:22

16  those -- I know -- are you saying you were under 18 at the

17  time?

18          DEFENDANT MOORE:  Yeah, the age is right here,

19  sir.

20          THE COURT:  I know.  I understand that, Mr. Moore.       14:22

21  Do you have a reason to say that because -- just because

22  you're under 18 doesn't mean you can't be charged as an

23  adult with a felony, which is I think what happened there.

24          DEFENDANT MOORE:  Yes, sir.

25          THE COURT:  Do you have a reason to say that you         14:23

1  were actually charged as a juvenile, or are you just saying          14:23

2  that you were under 18 at the time?

3          DEFENDANT MOORE:  I was under 18 at the time, sir,

4  that's what I'm saying.

5          THE COURT:  So do you have any reason to say that          14:23

6  the ones you've just read to me or any of the other ones

7  that are listed there, do you have any reason to know that,

8  where it says it was a felony, which is an adult charged

9  crime, that it really was -- you were really charged as a

10  juvenile?          14:23

11          DEFENDANT MOORE:  No, sir, I was charged as adult

12  at this time on the situation, sir.

13          THE COURT:  Well, the law is if you're charged as          14:23

14  an adult, then it's treated as an adult felony conviction

15  for purposes of deciding whether you're a career offender.          14:23

16  So even though you were under 18 at the time, if you were

17  charged and convicted as an adult as a felony, it's going to

18  be count just like you had been over 21.  Do you understand?

19          DEFENDANT MOORE:  Yes, sir.

20          THE COURT:  Is that what you're saying to me, or          14:24

21  is there something else?

22          DEFENDANT MOORE:  Yes, sir.

23          THE COURT:  That's what you're saying to me?

24          DEFENDANT MOORE:  Yes, sir.

25          THE COURT:  Is there anything else that you have          14:24

1  about any other objections or any clarifications about the          14:24

2  report?

3          DEFENDANT MOORE:  No, sir.

4          THE COURT:  And Mr. Makofka, you've heard this

5  conversation I've had with Mr. Moore.  Is there anything          14:24

6  about what I've said that you disagree with or do you want

7  to be heard on?

8          MR. MAKOFKA:  I agree with everything you've just

9  said, Your Honor.

10         THE COURT:  All right.  Mr. Moore, you can have a          14:24

11  seat, sir.  You will of course have a chance to speak later

12  on.

13         All right, I want to establish some factual

14  premises for the record, especially because of the

15  significant sentence that the guidelines and the law are          14:24

16  bringing me toward in this case.

17         First of all, I want to for the record note the

18  government on January 17, 2003, shortly before the trial,

19  filed an information to establish prior conviction.  That

20  was filed pursuant to 21 United States Code, Section          14:25

21  851(a)(1), and it states in substance that on or about July

22  31st, 2000, that Mr. Moore was convicted of possession of

23  cocaine, case number 99-8945-CF-A, which was in the Circuit

24  Court of Duval County, Florida.  The presentence

25  investigation report confirms that conviction and it also          14:25

1  confirms that there was a violation of probation, and then        14:25

2  Mr. Moore was sentenced to state prison.  In any event, let

3  me make sure I'm right about that.

4          That's correct.  And that -- the notice, or the

5  information filed by the government further states that        14:26

6  because of that prior drug felony offense which predated the

7  instant offense, that the enhanced penalty provisions of 21

8  USC Section 841(a)(1) and 841(b)(1)(C) apply, which meant

9  that for count one, which is not relevant any longer because

10 Mr. Moore was acquitted of that count, there was an        14:26

11 enhancement for that count, so that doesn't affect anything

12 here.  But for count two, there is also an enhancement up to

13 30 years of imprisonment, $2 million in fines and a

14 supervised release term of up to six years.  So that

15 enhancement was filed by the government and Mr. Moore was in        14:27

16 fact convicted of count two.  Therefore, the probation

17 officer has assumed for purposes of the scoring that count

18 two carried with it a penalty of up to 30 years of

19 imprisonment, $2 million in fines, and a term of supervised

20 release of at least six years.        14:27

21          My question for you, Mr. Makofka, the statute

22 allows Mr. Moore to contest whether that conviction actually

23 occurred or whether it's a qualifying conviction.  Do you

24 know of any basis for Mr. Moore to contest the information

25 in the government's notice regarding that state court        14:27

| | | |
|---|---|---|
| 1 | possession of cocaine conviction? | 14:27 |
| 2 | MR. MAKOFKA:  At this time, no, Your Honor. | |
| 3 | THE COURT:  All right.  The other prior crimes of | |
| 4 | Mr. Moore that are being used to enhance his sentence are | |
| 5 | under Chapter 4 of the guidelines, 4B1.1, page -- I'm sorry, | 14:28 |
| 6 | number 35 of the PSI on page 5, indicates that there are two | |
| 7 | prior felony convictions of a crime of violence or a | |
| 8 | controlled substance offense.  The two crimes that are | |
| 9 | listed there are also listed in the criminal history | |
| 10 | category of the report, but they are battery in a detention | 14:28 |
| 11 | facility, Duval County Circuit Court case number | |
| 12 | 2000-856-CF-B, a felony that is listed as a crime of | |
| 13 | violence, where Mr. Moore was sentenced on July 31st, 2000, | |
| 14 | and then a second battery on a law enforcement officer, | |
| 15 | Duval County Circuit Court, case number 1999-8946-CF-A, a | 14:29 |
| 16 | felony that is also listed as a crime of violence in the | |
| 17 | report, sentenced on September 29th, 1999.  Both of those | |
| 18 | adjudications are referenced in the criminal history | |
| 19 | portions of the PSI.  The 2000 battery in a detention | |
| 20 | facility is referenced at paragraph 43, page 9 of the PSI, | 14:29 |
| 21 | and indicates that Mr. Moore pled guilty, he was adjudicated | |
| 22 | guilty and sentenced to 24 months in Florida State Prison, | |
| 23 | concurrent with the cocaine conviction, and also concurrent | |
| 24 | with the 1999 battery on a law enforcement officer.  That is | |
| 25 | at paragraph 42 of the PSI, when Mr. Moore was aged 17.  He | 14:30 |

```
 1   was age 18 at the time of the battery in the detention        14:30

 2   facility.   The indication here on the battery on the law

 3   enforcement officer, number 42, which is the second

 4   conviction being used to enhance under Chapter 4, is that

 5   Mr. Moore pled guilty as to counts 1 and 2, which included    14:30

 6   the battery on a law enforcement officer, adjudication of

 7   guilt was withheld, he was sentenced to probation, but then

 8   he later violated probation and was adjudicated guilty.

 9   Probation was revoked and he was sentenced to 24 months

10   state prison, which was concurrent with the other two        14:30

11   numbers which I have previously read.

12           Mr. Makofka, does Mr. Moore have any basis to

13   contest the validity or the fact of the two felony

14   convictions which are listed in paragraph 35 of the PSI as

15   being a basis to enhance Mr. Moore to a career offender      14:31

16   category under Sentencing Guideline 4B1.1?

17           MR. MAKOFKA:   I wish I could say that he does, but

18   no, Your Honor.

19           THE COURT:   Do you have any doubt, Mr. Makofka,

20   based upon your review?  Because we've got, basically as you 14:31

21   know, Mr. Moore has other entries on his criminal history

22   but these are the ones that are driving the sentence.   We've

23   got a drug possession, a cocaine possession which was used

24   by the government to enhance under the information, and now

25   we've got the battery in a detention facility and a battery  14:31
```

1  on a law enforcement officer which I've just referenced.  At        14:32
2  least one of these crimes, if not two of them, were
3  committed before Mr. Moore turned 18.  Do you have any basis
4  to contest the stated fact that these were all adult charged
5  felony convictions?                                                  14:32

6            MR. MAKOFKA:  Again, Your Honor, no, I do not.

7            THE COURT:  All right, I had some minor
8  corrections to the report that I have found on my own, and
9  I'm going to go ahead and make them for the record.  And I
10 don't think they're going to be very significant, but in the        14:33
11 interest of clarity.

12           At paragraph 16, the probation officer attributed
13 two grams but less than three grams of cocaine base to
14 Mr. Moore.  That two grams counted the .53 grams that was
15 included in the count one charge as to which Mr. Moore was          14:33
16 acquitted.  I know there probably is an argument under the
17 guidelines they could still be included, but I just don't
18 think it's appropriate to include that .53 grams, therefore
19 I'm going to delete that.  And that brings it down to 1.53
20 grams, if I have it correctly, which would take it from             14:33
21 2D1.1(10) to 2D1.1(11), and would take the base offense
22 level from 20 to 18, and then the adjusted offense level
23 would be 18, the total offense level would be 18.

24           As I said, it's not going to end up mattering
25 because at paragraph 24, for the reasons stated, it went up         14:34

```
 1  to 24 anyway, and then none of that is going to matter     14:34
 2  because of the career offender category takes it out of the
 3  traditional calculation and it has its own calculation,
 4  which is even higher.  So for purposes of sentencing, I
 5  don't think it's going to matter, but for purposes of being  14:34
 6  correct, I do think that that's the appropriate calculation.
 7          I also, on page 5 of the PSI, there's a citation
 8  to U.S. sentencing guideline 3E1.B.  That should be
 9  3D1.1(b).  I also -- there's some language quoted from that,
10  and it's -- somehow it's not -- it didn't make it right in   14:35
11  the translation, it doesn't exactly make sense and I don't
12  know exactly how to fix it.  The officer who wrote it is not
13  here today.  But the essential point is that you have to
14  look for this consecutive -- for the consecutive sentencing
15  you look to 5G1.2(a), which does apply in this case.  And so 14:35
16  the ultimate result is still the same, but some of the
17  language at the top of page 5 is somewhat confusing.  I'm
18  not going to try to guess what the officer was trying to
19  say, but I do believe the correct provision is 3D1.1(b).
20          Mr. Makofka, is there any reason that you know of    14:36
21  that the court cannot now adjudicate the applicable
22  guideline range and statutory range at this time?
23          MR. MAKOFKA:  No, Your Honor.
24          THE COURT:  Mr. Talbot?
25          MR. TALBOT:  No, sir.                                14:36
```

1          THE COURT:  As I said, I have studied this very

2   carefully and read all the statutes and read all the

3   guideline provisions, and am satisfied that the probation

4   officer has correctly scored the matter.  I will probably

5   have some additional comments following adjudication, but

6   I'm going to go ahead and find the facts and apply the

7   guidelines, as stated as follows:

8          The total offense level will be 34.  That is an

9   offense level mandated by the Career Criminal provisions of

10  the guidelines, which again I will refer to momentarily.

11  Criminal history category will be VI.  Again, that criminal

12  history category is mandated by the career criminal status

13  of Mr. Moore.

14          That calculation leads to a guideline range of 262

15  months of imprisonment to 327 months of imprisonment, which

16  is 21 years, ten months, to 27 years, three months.  In

17  addition, under the provisions of 18 USC, Section 924(c),

18  which provisions Mr. Moore was convicted of at trial, and

19  that is the statute which charged Mr. Moore with carrying a

20  firearm during and in relation to a drug trafficking crime

21  for which he may be prosecuted in a court of the United

22  States, namely, distribution of cocaine or possession of

23  cocaine with intent to distribute, as charged in counts 1

24  and 2, in violation of 18 USC Section 924(c)(1).

25          Now, of course, Mr. Moore was acquitted of count

14:37

14:37

14:37

14:38

14:39

14:39

1  one, so that could not be used but he was convicted of count    14:39

2  two, possession with intent to distribute cocaine, and that

3  is the legal basis for count 4, and the jury did find

4  Mr. Moore separately guilty of count 4.  Under 924(c) the

5  court is required, when such a conviction is made, to          14:39

6  sentence Mr. Moore to an additional five-year minimum

7  mandatory sentence, and it is required by law to run

8  consecutively to the guideline sentence or the other

9  sentence imposed on the other counts.

10        So what that effectively means is wherever the          14:40

11  court sentences Mr. Moore within the 262 to 327 months under

12  the guidelines, the court is then required to add to that

13  sentence a five-year or 60-month minimum mandatory sentence

14  because of the conviction for count 4.  That calculation, at

15  the low end of the guideline range, would be 322 months of    14:40

16  imprisonment, and at the high end would be 387 months of

17  imprisonment.

18        There is also a six-year supervised release, which

19  would be mandatory.  The fine is $17,500 to $2 million;

20  that's the fine range.  Restitution is not applicable.        14:41

21  There is a $300 special assessment, which is $100 for each

22  count on which Mr. Moore was convicted.

23        Mr. Talbot, does the government agree with the

24  court's calculations of the guidelines?

25        MR. TALBOT:  Yes, sir.                                   14:41

```
 1              THE COURT:  Mr. Makofka?

 2              MR. MAKOFKA:  Yes, Your Honor.

 3              THE COURT:  Mr. Makofka, I will be happy and

 4   required by law, but also happy to hear from you and from

 5   Mr. Moore concerning any matter that you wish to be heard on

 6   before the court pronounces sentence.  As I said, I have now

 7   determined, without objection, the actual offense levels and

 8   other matters, but I'm still able to hear from you and the

 9   law requires that I hear from you in any method that you

10   wish to concerning allocution, and also that I hear from

11   Mr. Moore if he wishes to be heard.  And I will be happy to

12   hear from you, sir, if you care to be heard.

13              Mr. Moore why don't you come up with Mr. Makofka

14   to the podium, and I'll be happy to hear from you both.

15              MR. MAKOFKA:  Thank you, Your Honor.

16              Your Honor, this is obviously one of those cases

17   that I find myself a little disheartened to have to appear

18   before Your Honor on.  And I know Mr. Moore has certainly

19   had better days.  Frankly, I'm a little deflated, looking at

20   the guideline calculations and the possible ranges, even on

21   the low end, I think, with all due respect to this court and

22   to the fine work that the United States Congress does, I

23   think they're absurd.  I think the fact that this gentleman

24   was found in possession of less than 2 grams of crack

25   cocaine, and possession, even as a convicted felon, of a
```

14:41

14:41

14:42

14:42

14:43

14:43

1  small-caliber firearm who is now facing a term of                14:43

2  incarceration in excess of six years of the amount of time

3  he's already been on this planet, is problematic.   And

4  that's my personal view on the matter.

5         With regard to more relevant considerations,              14:43

6  Mr. Moore obviously stands before Your Honor 21 years old,

7  as the PSI reflects.   He has a tenth grade education.

8  Arguably, and I don't say this to embarrass the gentleman,

9  but a below average IQ of 84, based on previous testing.   He

10 comes from a broken home.   His father died in prison ten       14:43

11 years ago.   I mean, I can't imagine a worse subset of

12 personal characteristics to begin a life with.   And,

13 frankly, I don't think this gentleman has ever been given a

14 fair chance.   True, he's been in and out of the state court

15 system; true, he violate probation; true, he found himself     14:44

16 as a juvenile committing serious felony crimes.   But when I

17 look at the guideline calculation and I just look at the

18 fact that he's got juvenile felony convictions where he's

19 charged as an adult, being used to bump him up not only on

20 the career offender side, but on the 851 enhancement, it's    14:44

21 frankly mind boggling, and I guess what I'm asking the court

22 to do is, to the extent that Your Honor does have some

23 discretion in these matters, is to consider a humble and

24 respectful request for some form of leniency for this

25 gentleman.   And I would ask that your Honor consider          14:44

1  sentencing Mr. Moore to the low end of the guidelines, if                14:44

2  for no other reason than when he comes out of federal

3  prison, hopefully one day, he can enjoy some semblance of a

4  normal life, whenever that may be.  And I say that with the

5  utmost respect to Your Honor and this court.                              14:45

6         And I'm not -- I won't -- I want to emphasize, I'm

7  not taking away from the significance of the jury's

8  findings.  This gentleman broke the law, based on the jury's

9  verdict.  He needs to be punished.  I just, again, have a

10 very hard time swallowing a 26-, 27-year guideline sentence               14:45

11 under these circumstances, but I think I've probably made my

12 point clear.

13        Mr. Moore, do you wish to address His Honor at

14 this time?

15        DEFENDANT MOORE:  No, sir.                                         14:45

16        MR. MAKOFKA:  Very well.

17        THE COURT:  I just want to make sure the record is

18 clear.  The law requires me -- I would do it anyway -- but

19 the law requires me to ask you whether you want to say

20 anything on your behalf before I impose sentence.  And                    14:45

21 you're not required to, but I've got to make sure that I've

22 asked you, and I have to make sure you do understand you

23 have this right.  So do you understand that you have the

24 right to speak if you want to, sir?

25        DEFENDANT MOORE:  Yes, sir.                                        14:45

1      THE COURT:  Do you have anything you want to say      14:45
2  to me before I impose sentence?
3      DEFENDANT MOORE:  No, sir.
4      THE COURT:  All right.  Thank you all.  Why don't
5  you have a seat.      14:46
6      Mr. Talbot?
7      MR. TALBOT:  Thank you, Your Honor.  I would
8  concur with Mr. Makofka, I would request that the court --
9  and I've calculated out what I think is the lowest lawful
10  sentence that can be imposed, and that's 262 months as to      14:46
11  count two with six years of supervised release, 120 months
12  concurrent, with the 262-month sentence on count three, with
13  three years of supervised release concurrent.  And then as
14  to count four, it would have to be a 60-month consecutive
15  sentence to counts two and three.  I believe that's with      14:46
16  three years of supervised release, which appears to be
17  allowed to be concurrent.
18      So I would submit that that appears to be the
19  lowest lawful sentence that Mr. Moore can receive, and I
20  would ask the court to impose that.      14:46
21      THE COURT:  Before I impose a sentence, I will, as
22  I indicated, make a couple of remarks, not only to indicate
23  or show the record that I have carefully looked at each of
24  these components that lead to the sentence, but also for any
25  reviewing court that may be looking at this in the future,      14:48

1  that the reviewing court be clear as to the steps that were        14:48

2  taken to reach this sentence and determine whether I have

3  properly calculated these guideline and statutory

4  provisions, and whether those calculations are lawfully

5  required or whether there's some basis for a different           14:48

6  calculation that would be more favorable to Mr. Moore.   I'm

7  not aware of it.  As everybody knows, the judge, although

8  the judge imposes sentence, the judge is bound by the law

9  that is given to the judge, both through the statutes that

10 Congress passes and the sentencing guidelines that are part       14:49

11 of the sentencing structure that the Congress has created,

12 and so it is not my role, nor in my ability to impose a

13 sentence that is outside of what the law permits or

14 requires.  And so my task is to apply that law as faithfully

15 as I can, regardless of my own sense of what an appropriate       14:49

16 sentence would be in this case.

17         What I have done here, and this is based upon the

18 probation officer's recommendations, which I have verified,

19 I have essentially reviewed the offense level computations

20 at pages 3 and 4 and determined that a change was required.       14:50

21 However, the ultimate total offense level of 24 essentially

22 becomes irrelevant because of later events which occur in

23 the scoring.  Those events really begin on paragraph 35.

24 Under sentencing guideline 4B1.1, Mr. Moore is considered

25 what is called a career offender, and a career offender is        14:50

1  defined as an individual -- this is 4B1.1(a) -- a career          14:50
2  offender, if a defendant was at least 18 years old at the
3  time the defendant committed the instant offense of
4  conviction -- and that was clearly the case -- the instant
5  offense of conviction is a felony that is either a crime of       14:51
6  violence or a controlled substance offense -- and this was a
7  controlled substance offense.  I'm not sure whether the
8  count 4 would be considered a crime of violence or not, but
9  it doesn't really matter, because this is a controlled
10 substance case for sure.  And the defendant has at least two      14:51
11 prior felony convictions of either a crime of violence or a
12 controlled substance offense.
13          The two crimes that Mr. Moore was convicted of in
14 state court, battery in a detention facility in 2000 and
15 battery on a law enforcement officer, which I've already          14:52
16 referenced, and which I referenced at paragraph 35 of the
17 PSI, do qualify as prior felony offenses under this rule,
18 because they are considered a crime of violence, battery
19 being violent by nature, or by definition, I should say.
20          The court's findings, then, that the three prongs        14:52
21 of the career offender category have been satisfied -- and
22 there has been no objection or statement to the contrary --
23 one of the things that certainly occurred to me was that if
24 Mr. Moore was not 18 at the time he committed one or more of
25 these offenses, does that still count for career offender        14:52

1    status.   And the guidelines are clear about that under the    14:52

2    definitions.   Prior felony conviction, for purposes of this

3    career offender category includes a conviction for an

4    offense committed prior to age 18 is an adult conviction if

5    it is classified as an adult conviction under the laws of    14:53

6    the jurisdiction in which the defendant was convicted.   And

7    these, by all accounts, these two convictions were felonies

8    under Florida law and he was treated as adult under Florida

9    law, and there's been no contention to the contrary.   So I

10   think by the clear language of the guidelines, those two    14:53

11   felony convictions do apply and do make Mr. Moore a career

12   offender within the meaning of the guidelines.

13           Once I make that finding, then the guidelines tell

14   me what to do.   They say a career offender's criminal

15   history category in every case under this subsection shall    14:54

16   be category VI.   So regardless of what Mr. Moore's real

17   history is or calculated criminal history under the

18   guidelines, the career offender regulation or guideline

19   requires that it be calculated at VI, which the highest.

20           Then you look to the offense statutory maximum and    14:54

21   offense level, which are charted out in 4B1.1(b).   And if

22   the offense of conviction carries with it a 25-year or more

23   maximum sentence, you're at offense level 34.

24           Now, the conviction that Mr. Moore had originally

25   in count two would have been the one that would have been    14:54

1  the closest.  Originally, the drug offense originally had a

2  20-year maximum, but because the government filed the

3  notice, the information to establish the prior conviction,

4  under the law the maximum penalty for count two, the drug

5  offense, was increased because of the enhancement up to 30

6  years, which means that Mr. Moore -- the offense statutory

7  maximum now becomes 25 years or more under subsection (b),

8  and that's an offense level of 34.

9          That offense level of 34 then trumps any other

10  previous offense level calculation under the guidelines.

11  And the offense level 34 at a criminal history category of

12  VI is 262 to 327 months of imprisonment.

13          Then, because Mr. Moore was convicted in count 4

14  of a 924(c), which is carrying a firearm during and in

15  relation to a drug trafficking crime for which he may be

16  prosecuted in a court of the United States, the 924(c)

17  itself requires that a consecutive minimum mandatory

18  sentence of five additional years be tacked onto the

19  previously calculated offense levels and guideline

20  calculations.  That requirement for consecutive sentencing

21  under these circumstances is also confirmed in 5G1.2(e).

22  That then, as Mr. Talbot indicated, gives, if you add the 60

23  months to the 262 low end, that gives you a total sentence

24  of 322 months of imprisonment.

25          The court will, when I make the sentencing

14:54

14:55

14:55

14:56

14:56

14:57

1  statement, I will split out the counts and say what I'm          14:57
2  doing on each count, but that's going to be the net effect
3  of it.

4          The additional comments that I will make are that
5  there are some factors in this case that, if the guidelines      14:57
6  provided or the law provided any discretion with the court
7  in this matter, the court might avail itself of that
8  discretion to ameliorate the harshness of this sentence.
9  Those factors include the fact that some of the crimes are
10 being used to drive the career offender calculation, and the     14:58
11 government's enhancement, which were filed separately, were
12 committed while Mr. Moore was a juvenile.  Mr. Moore has
13 been in trouble since he was 13 years old; he's 21 now.  He
14 has a pretty poor record for someone of such a young age.
15 But, nevertheless, these felonies, which are now naming him      14:59
16 as a career offender, some of them and maybe more than one
17 were committed when he was under 18 years old.  Certainly
18 they're still felonies.  Certainly the State of Florida,
19 under its law, I'm sure was entitled to charge him as an
20 adult.  But I do think it's a factor, an ameliorating factor     14:59
21 that the court might take into account if the court were
22 permitted to do so.

23          And just so I'm clear about what I'm saying, the
24 possession of cocaine charge that the government used to
25 enhance, to file the enhancement, was committed when            14:59

```
 1  Mr. Moore was 17 years old.  The battery on a law        14:59
 2  enforcement officer, which was a lesser-included offense,
 3  was committed when Mr. Moore was 17 years old.  The battery
 4  in detention facility was committed when he was 18 years
 5  old.  So that would not -- so it's the first two that I    15:00
 6  mentioned, one that the government used to enhance, the
 7  other that was used by the probation officer to count toward
 8  the career offender status, both of those convictions were
 9  committed when Mr. Moore was 17 years old.  Again, it
10  doesn't excuse it, they're still felonies, but it is a     15:00
11  factor I think the court would otherwise at least consider
12  as a potential ameliorating circumstance if the law
13  permitted the court to do so.
14          The other factor that the court would potentially
15  take into account if the court had the discretion to do so 15:00
16  were the nature of these crimes.  And they are written in
17  the PSI, and I won't belabor them.  They certainly were all
18  felonies, but they were, on a scale of minor felony to the
19  most extremely serious felony, they were more toward the
20  minor category than the most serious category.  Mr. Moore  15:01
21  was not a known drug trafficker in the sense of what we
22  usually think of that term, in terms of having an
23  organization or having large quantities of drugs.  He was
24  what I think probably in the street is referred to as a
25  small-time drug dealer.                                    15:01
```

1        The two batteries, while certainly serious, were

2   not of the magnitude that another type of assault or battery

3   might be.  And so, again, this wouldn't be -- excuse the

4   conduct.  It wouldn't -- it still, I'm sure, would play into

5   the court's consideration, but given the age Mr. Moore was

6   when he committed the offenses and given the type of the

7   offenses, it seems to me that the sentencing guidelines are

8   being disproportionate in the consequences that are being

9   visited upon Mr. Moore because of those prior offenses.

10       Third, the sentencing structure, the sentencing

11  guidelines structure has coalesced into the worst possible

12  consequence for Mr. Moore, given the record that supports

13  it.  And what I mean by that is this:  The guideline

14  calculation, if you took away the career offender

15  calculation, the guideline calculation would have been a

16  level 24, which in and of itself is a serious calculation.

17  And that would be at his criminal history category, which I

18  believe was 5 otherwise, it would be 92 to 115 months.  So

19  it certainly would be a significant sentence, even without

20  career offender status.

21       But, of course, the law requires and the

22  guidelines require that if the prerequisites are met for

23  career offender status, that the officer calculate it and

24  score it that way.  What that meant, of course, for

25  Mr. Moore was it went from a level 24 to a level 34, which

15:01

15:02

15:02

15:03

15:03

15:03

1  gets us up into the 262 to 327 months.  So it's a ten-level            15:03
2  increase.  It's not as though, under the guidelines, that
3  Mr. Moore's criminal history was not taken into account even
4  at the original base offense level, because he was given a
5  base offense level of 5, even under the traditional               15:04
6  counting, which takes into account the seriousness of his
7  criminal history.  And so he would have been facing
8  significantly more time because of his prior record than he
9  would have if he didn't have any record, even under the
10 level 24.  So the guidelines take that into account.              15:04

11       But then when you go to career offender, it takes
12 it into account to a very extreme degree.  And maybe that's
13 what Congress intended, maybe that's what the Sentencing
14 Commission intended, but on these facts it seems to me that
15 the career offender enhancement is disproportionate to the         15:04
16 actual crimes that Mr. Moore committed.

17       And, there's even another quirk which was
18 significant, and, again, maybe I think properly scored, but
19 still significant.  Without the enhancement filed by the
20 government, which increased count two's penalty from 20 to          15:05
21 30 years, and even applying the career offender provisions,
22 Mr. Moore would have been at a level 32 instead of a level
23 34.

24       So what that means is that the guidelines have
25 already calculated him as a career offender.  They say             15:06

1  you're a career offender; they say you're at criminal           15:06

2  category VI; your crimes are such that you will be sentenced

3  as a career offender; you're going to go from a level 24 all

4  the way up to a level 32, which a level 32 is 210 months to

5  262 months.  So, a very significant sentence.  But, in          15:06

6  addition to that, the government files the enhancement under

7  count two, and that bumps Mr. Moore up another two levels to

8  a 34, which is 262 to 327 months.  And I actually asked the

9  probation officer whether that wasn't in effect double

10 counting.  But I can find no basis in the guidelines to say     15:06

11 that it is, and therefore, I'm not disallowing the two

12 levels, but I do know that it seems that the confluence of

13 the government's filing of the notice and Mr. Moore

14 receiving career offender status, has produced an offense

15 level that arguably overrepresents what it should in fact       15:07

16 be.

17       I will state for the record that I do understand

18 that the two offenses that go into making Mr. Moore the

19 career offender are different from the felony offense which

20 the government has used to enhance, and so I do understand      15:07

21 that there also could be an argument that that's an

22 appropriate way to do it, and it appears to be the way the

23 guidelines do it anyway, but I still think that is a

24 confluence of events that has just driven these guidelines

25 up into a range that, if the court had any discretion in the    15:08

1   matter, would be beyond the range the court would sentence

2   at.

3          Finally, of course, we have the other event in the

4   case, which is that the government charged a 924(c), in

5   addition to charging the drugs, and that he was a felon in

6   possession.  The government charged a 924(c), which is

7   essentially armed drug trafficking.  And on the facts of the

8   case, I did hold that there was a jury question presented.

9   There was no evidence, of course, that Mr. Moore used the

10  gun, I mean discharged it or brandished it.  It was in his

11  car, as I recall it, under the floorboard, and the drugs

12  were in, I think, the arm rest.

13         But under the law of the Eleventh Circuit and the

14  statute, I found a jury question, and the jury did convict

15  him of that count.  And so I think -- my opinion is, we'll

16  see what the Eleventh Circuit says, but my opinion is that

17  it's a legally sustainable result.  But what, of course, the

18  effect of that is, it adds another five years on top of this

19  262 to 327 months and creates a guideline range of 322

20  months to 387 months.

21         And, again, all of that, I cannot find any error

22  in any of that calculation.  I've not been advised by

23  Mr. Makofka or by the government of any potential error, and

24  I have looked at it as hard as I can look at anything, and I

25  think it's right.  And I think it's right.  And I think I

15:08

15:08

15:09

15:09

15:09

15:09

15:10

```
 1  have no alternative but to sentence Mr. Moore in that              15:10
 2  guideline range, and so that's what I'm going to do.  But I
 3  want the -- I wanted the record to be clear about exactly
 4  how I arrived at it, and also my reservations about the way
 5  that the guidelines and the law has required the court to        15:10
 6  come out in this case.
 7            Having said that, I don't want to be misunderstood
 8  that I think Mr. Moore doesn't deserve a sentence and
 9  doesn't deserve a significant sentence.  He has, obviously,
10  found himself unable to comply with the requirements of the      15:10
11  law since he was 13 years old.  And there are a lot of
12  reasons, probably, for that, and I have read those reasons,
13  but the fact remains is the law holds him responsible for
14  his conduct, and his conduct has not been good.  And the
15  fact is, he was convicted of three federal crimes in this        15:11
16  case.  And I have found that there's no basis to set aside
17  those convictions and that the jury's verdict should stand.
18            And so I don't want to be heard to say that I
19  think there ought to be some type of light sentence in this
20  case.  I think a significant sentence in this case is            15:11
21  appropriate.  I just find the guideline and the legal
22  calculations to take that beyond where it would be
23  appropriate, given the circumstances that I've outlined.
24            But, be that as it may, it is my duty to sentence
25  Mr. Moore according to the law, and that's what I will do.      15:12
```

1          Mr. Moore, Mr. Makofka, if you'll come forward,       15:12
2   please.
3          Mr. Makofka, do you have anything else you want to
4   put on the record, either based on my comments or any other
5   matters that you wish the court to be aware of by way of       15:12
6   mitigation?
7          MR. MAKOFKA:  No, Your Honor.  Thank you.
8          THE COURT:  Mr. Talbot, does the government wish
9   to say anything for the record, or to have any other matter
10  come to the court's attention before I proceed with          15:12
11  sentencing?
12         MR. TALBOT:  No, Your Honor.
13         THE COURT:  Mr. Algie Moore, on February 14th,
14  2003, you were found guilty by a jury of counts two, three
15  and four of the superseding indictment charging possession   15:12
16  of cocaine base with intent to distribute, in violation of
17  21 United States Code, Section 841(a)(1) and 841(b)(1)(C);
18  possession of a firearm by a felon, in violation of 18
19  United States Code Section 922(g); and possession of a
20  firearm in relation to a drug trafficking crime, in          15:13
21  violation of 18 United States Code, Section 924(c)(1),
22  respectively.
23         The court has previously adjudged you guilty of
24  these offenses.
25         Mr. Makofka, do you know of any reason why the        15:13

1   court may not now proceed with imposition of sentence?      15:13

2            MR. MAKOFKA:  No, Your Honor.

3            THE COURT:  Do you wish to make any further

4   statement, or does Mr. Moore wish to make any further

5   statement in mitigation?                                    15:13

6            MR. MAKOFKA:  No, Your Honor.

7            THE COURT:  The court having asked Mr. Moore why

8   judgment should not now be pronounced, and no cause to the

9   contrary appearing to the court, and Mr. Moore and

10  Mr. Makofka having made statements on his behalf, and the   15:13

11  court having reviewed the presentence report, and pursuant

12  to the Sentencing Reform Act of 1984, it is the judgment of

13  this court that the defendant, Algie Moore, is hereby

14  committed to the custody of the Bureau of Prisons, to be

15  imprisoned for a term of 262 months.                        15:14

16            This term consists of a 262-month term as to count

17  two, and a 120-month term as to count three, with each count

18  to run concurrently.

19            Furthermore, as to count four, Mr. Moore is hereby

20  committed to the custody of the Bureau of Prisons, to be     15:14

21  imprisoned for an additional term of five years, or 60

22  months, to run consecutively to the terms imposed in counts

23  two and three.

24            Upon release from imprisonment, Mr. Moore, you

25  shall be placed on a term of supervised release for a term   15:15

1  of six years.  This term consists of terms of supervised

2  release of six years on count two, which is required by law,

3  and a term of three years on each of counts three and four,

4  all of which will run concurrently.

5       While on supervised release, you shall comply with

6  the standard conditions adopted by the court in the Middle

7  District of Florida.  In addition, you shall participate as

8  directed in an inpatient or outpatient program approved by

9  the probation officer for treatment of narcotic addiction or

10  drug or alcohol dependency, which may include testing for

11  the detection of substance use or abuse.  Further, you shall

12  have to contribute to costs of such treatment in an amount

13  determined reasonable by the probation office.

14       You shall participate, as directed, in any program

15  of mental health treatment approved by your probation

16  officer.  You shall be required to contribute to the costs

17  of those services, as determined by the probation officer,

18  based upon your ability to pay.

19       You shall be required to submit to any searches of

20  your person, residence, place of business, computer or

21  vehicle conducted by the probation officer at any reasonable

22  time and reasonable manner, based upon any reasonable

23  suspicion of contraband or evidence of a violation of

24  condition of release.  Failure to submit to these searches

25  may be grounds for revocation of supervised release.  And

15:15

15:15

15:15

15:16

15:16

15:16

1  you shall inform any other residents that your premises may

2  be subject to such searches.

3          You shall refrain from any unlawful use of

4  controlled substances.  You shall submit to one drug test

5  within 15 days of placement on supervised release, and at

6  least two periodic drug tests thereafter, as directed by the

7  probation officer.

8          Based upon your financial status, I will waive

9  imposition of any fine and applicable costs of supervision

10  and imprisonment.

11          I am required to order that you pay a special

12  assessment of $300 to the United States, which shall be due

13  immediately.

14          I will today, unless there's objection, be signing

15  a preliminary order of forfeiture as to the weapon, I

16  believe is the only matter that's being forfeited.  And

17  those are subject to forfeiture, and that will be part of

18  your sentence as well and judgment of the court.

19          It is further ordered that -- strike that.

20          This sentence is within the guideline range.  That

21  range does exceed 24 months.  And the sentence is imposed

22  for this reason:  the court finds that, given the length of

23  the sentence, the consecutive nature of the count four

24  sentencing, that a sentence at the low end of the guideline

25  range is fully justified.

15:16

15:16

15:17

15:17

15:17

15:18

1      I will remand you to the custody of the United

2  States Marshal to await designation by the Bureau of

3  Prisons.

4      You are now advised that it is -- before I say

5  advised on appeal rights, Mr. Makofka, are there any

6  requests for recommendation in terms of placement, in terms

7  of -- one of the things I considered was whether the court

8  should recommend Mr. Moore for the intensive 500-hour

9  program in the Bureau of Prisons, not only because I think

10  it might be valuable for him, but successful completion of

11  it can result in some gain time.  Do you request that on his

12  behalf?

13      MR. MAKOFKA:  I do make that request, Your Honor.

14      THE COURT:  All right.  I will recommend to the

15  Bureau of Prisons that Mr. Moore be placed in the intensive

16  500-hour drug treatment program while in incarceration.

17      Is there any request concerning location of

18  imprisonment?

19      MR. MAKOFKA:  We'd ask the court to consider

20  requesting the Coleman facility.

21      THE COURT:  The court will recommend to the Bureau

22  of Prisons that Mr. Moore serve his term of imprisonment at

23  the facility in Coleman, Florida, the Florida facility in

24  Coleman, or at such other place as is as close to there as

25  possible.

15:18

15:18

15:18

15:19

15:19

15:19

1          Mr. Moore, just so you're clear, I can't tell the        15:19
2  Bureau of Prisons where to put you, I can only recommend it.
3  But I have recommended it be as close to your home as
4  possible.  I've also recommended you for this drug program.
5  If you go through it, if you're accepted to it and you go       15:19
6  through it successfully, it can knock some time off your
7  sentence, so that's why I'm recommending that.

8          DEFENDANT MOORE:  Yes, sir.

9          THE COURT:  Are there any other requests for
10  recommendation, Mr. Makofka?                                   15:20

11          MR. MAKOFKA:  No, Your Honor, thank you.

12          THE COURT:  You are now advised, sir of your right
13  to appeal from the judgment and sentence of this court
14  within ten days from this date.  Failure to appeal within
15  the ten-day period shall be a waiver of your right to          15:20
16  appeal.  The government may file an appeal from this
17  sentence.  You are also advised that you are entitled to the
18  assistance of counsel in taking an appeal, and if you are
19  unable to afford a lawyer, one will be provided to you
20  without cost or charge to you.                                 15:20

21          The court having pronounced sentence, do counsel
22  for either Mr. Moore or the government have any objections
23  to the sentence, or to the manner in which it is imposed, or
24  at the manner in which the court has pronounced sentence,
25  other than any previously stated for the record, any -- just  15:21

1  to be clear, any previously stated objections are preserved                15:21

2  for the record.  Are there any other objections to the

3  sentence of the court or the manner in which the court has

4  pronounced it?

5          MR. MAKOFKA:  None from the defense, Your Honor.                    15:21

6          MR. TALBOT:  No objection, Your Honor.

7          THE COURT:  Mr. Makofka, what is Mr. Moore's

8  situation regarding appeal?  Are you intending to represent

9  him?

10          MR. MAKOFKA:  Yes, Your Honor, I am.                                15:21

11          THE COURT:  So you'll be filing the notice and

12  proceeding?

13          MR. MAKOFKA:  Correct.

14          THE COURT:  Very good.

15          Mr. Moore, what will happen, sir, is that you will                 15:21

16  be returned to the Duval county facility.  Sometime in the

17  near future, I can't tell you when, you will be designated

18  to go to your facility that you will start serving your

19  sentence at.  And Mr. Makofka said he's planning to

20  represent you on the appeal, so he'll stay in touch with you  15:21

21  on the appeal.  Appeals take a long time, and so don't be

22  surprised if a lot of time goes by, but Mr. Makofka will

23  keep you informed.  And then it will go to a higher court

24  for review of your case.  Do you understand, sir?

25          DEFENDANT MOORE:  Yes, sir.                                         15:22

1        THE COURT:  Anything else, Mr. Makofka?                    15:22

2        MR. MAKOFKA:  No, Your Honor.  Thank you.

3        THE COURT:  Mr. Talbot?

4        MR. TALBOT:  No, sir.

5        THE COURT:  Mr. Moore, this is obviously not a            15:22

6  happy day for anyone, and I do wish you well, sir.

7        DEFENDANT MOORE:  Yes, sir.

8        THE COURT:  Be in recess.

9        THE MARSHAL:  All rise.

10       (Proceedings concluded at 3:16 p.m.)                       15:22

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3  UNITED STATES DISTRICT COURT)

4  MIDDLE DISTRICT OF FLORIDA

5

6        I hereby certify that the foregoing transcript is a

7  true and correct computer-aided transcription of my

8  stenotype notes taken at the time and place indicated

9  therein.

10

11

12

13

14        _____ 7/1/2003
              L. MARIE SPLANE, Official Court Reporter,
15            United States District Court,
              Middle District of Florida.

16

17

18

19

20

21

22

23

24  *Registered Diplomate Reporter (RDR)*

25  *Certified Realtime Reporter (CRR)*