TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

---

FROM: 30003018
TO:
SUBJECT: Consolidated motion
DATE: 11/23/2023 07:56:47 AM

UNITED STATES DISTRICTY COURT MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,
RESPONDENT
V.                                                      CASE NO. 3:02-CR-233(S1)-j-32

ALGIE MOORE, DEFENDANT- MOVANT

_____/

---

MR. MOORES, PRO SE, CONSOLIDATED MOTION/ MEMORANDUM FOR REDUCTION OF HIS 322 MONTHS SENTENCE TO TIME SERVED OR A LESSER SENTENCE PURSUANT TO 3582(C)(1)(A);U.S.S.G1B1.13 (NOV. 1. 2023); AND 3582(C)(2)

---

ALGIE MOORRE #30003-018
USP CANAAN
P.O. BOX 300
Waymart PA 18472

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

----

FROM: 30003018
TO:
SUBJECT: P2 CONSOLDIATED REDCUTION MOTION
DATE: 11/23/2023 07:58:45 AM

SUMMARY OF MOTION
_____

  Mr. Moore was 21 years old at the time of sentencing in 2003. He was sentence to 322 months for drug trafficking and gun possession; possession of a gun in furtherance of a drug trafficking offense. He has a 2027 projected release date
The government filed an 851 enhancement
under 21 U.S.C. 841(b)(1)(c) thus at that time he faced a maximum of 30 years. Mr. Moore is now 41 years old and Moves this court for a reduction of his 322 months sentence to time served arguing that the following extraordinary and compelling reasons warrants relief and 18 U.S.C. 3553(a) factors support a reduction to time served:
If resentenced today Mr. Moore would face only a maximum sentence of 20 years plus 60 months for the 924(c) because of (1) Non retroactive changes made by the first Step Act 21 U.S.C. 851; 21 U.S.C. 802(57); 18 U.S.C. 924(e)(2)- His prior 1999 state conviction for possession of cocaine will not qualify as a "serious drug felony"; (2) Young age at the time of the offense- that under 21 years old;(3) Harsh prison condition due to the covid-19 pandemic;(4) Post Conviction Rehabilitation (5)The Guidelines according to United States v. Booker is advisory not mandatory;(6) Mr. Moore has a solid release plan- Home and work waiting upon release. (Disparity between the 262 months sentence he received in 2003 based on the 851 enhancement and the 240 months maximum sentence he would receive today; (7) today Mr. Moore would not be a career offender because he do not have a qualifying controlled substance offense or a crime of violence. 18 U.S.C. 3582(c)(1)(A).

  In addition as part of this consolidated motion is the retroactive changes in 2023 pertaining to 2 points being added to the criminal history score for being on parole or supervised release.

  Comes now defendant,in the above titled action to respectfully move this honorable court for a reduction in his sentence, in support of said request defendant states as follows: On November 1, 2023 amendments expanding federal compassionate release went into effect ( Amendments 821 and 814 becomes effective February 1, 2024). Congress gave judges the authority to grant an incarcerated individual a reduction in sentence (AKA compassionate release" For extraordinary and compelling reasons. congress delegated the job of describing extraordinary and compelling reason to the U.S. Sentencing commission (USSG). Earlier this year, the USSC voted on a slate of amendments that enlarged the list of extraordinary and compelling reasons a judge may rely on when considering a motion for compassionate release. said amended policy statement, sect 1b1.13, can be found in the 2023 federal sentencing guideline manual. See USSG

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

---

Amendment 814 to amendments 1b1.13 reduction in term of imprisonment under 18 U>S>C. sect. 3582(c)(1)(A) (compassionate release). on August 24, 2023 the U.S. sentencing commission by a majority vote allowed for delayed retroactive application of amendment 821 relation to criminal history until February 1, 2024.

p.2

For all the reasons stated herein as well as all the reasons stated in the attached memorandum of law and facts. ., as well for any other reasons that this case make evident and the court can conceive or find appropriate based on the facts of this case. the defendant thereby moves this court for a reduction in his sentence to any amount of years and/or for time served.

21 years old at the time of sentencing

---

As evidenced on page of defendant's sentencing transcript, the court noted that this defendant was 21 years old at sentencing-- ant that defendant's prior convictions that caused his federal sentence to be enhanced were committed all while defendant was a juvenile, although he pled guilty to adult offenses. pp. 21-22 Sent. Tr. May 29,2003.

(A) Adolescent decision-makers in general are less future oriented and less likely to properly consider the consequences of their actions. when compared to adults studies show that adolescent are less likely to consider alternative courses of action, understand the perspective of others or restrain impulses. In a study of more than 1,000 adolescents and adults, researchers investigate the relationships among the factors of age maturity, and antisocial decision- making. See Elizabeth Caufman & Lawrence Steinberg, Immaturity and judgment in adolescence: why adolescents may be less culpable than adults, 18 behav, Sci. & L. 741 (2000). Adolescents on average may be "less responsible more myopic and less temperate than the average adult." Id at 757, and in this study, the most dramatic change in behavior occurred sometimes between 16 and 19 years of age, especially with respect to perspective" (i.e.. the inability to limit impulsivity and evaluate situations before acting). Id. At 756 and it was not until age 19 that this development of responsible decision making plateaued. The enactment of the First Step Act demonstrates that congress has now come to agree with the empirical findings and evidence made through numerous in depth studies and reports that adolescence does not end at 17 years of age, rather, by defining the term "youth" in the Act as "any prisoner . . . who was 21 years of age or younger at the time of commission or alleged commission of the offense for which the individual is being prosecuted or serving a term of imprisonment, as such the case may be," congress has expanded the reach of the protection set forth by the Supreme Court in Miller, thereby ensuring that the criminal justice system would in fact be just.

p.3

(B) in 2007, the Supreme Court held that federal judges were free to sentence beneath the guidelines range set forth by

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

---

the sentencing commission provided that the guideline range was properly considered by the sentencing judge. United States v. Gall, 551 U.S. 38 (2007); And Kimbrough v United States, 552 U.S. 85,109 (2007). Supreme court decisions have increased justification for this trend, citing research proving physiological characteristics of teenagers such as:

(1) their lack of maturity and underdeveloped sense of responsibility that leads to recklessness; impulsivity, and deedless risk- taking; (2) their vulnerability to negative influences and outside pressure, including from family and older negative influences; ; and (3) their limited control over their environment and inability to extricate themselves from disadvantaged circumstances in which they find themselves. See Miller v. Alabama, 567 U.S. 460,469 (2012). One of the hallmarks of adolescent risk taking is that it is much more likely than that of adults to occur in the presence of peers, as evidenced in studies of reckless driving, substance abuse, and crime. Peer pressure "can arouse emotion of fear, rejection, or desire to impress friends [family] that can undermine reliability of adolescent behavioral control systems and result in actions taken without full consideration or appreciation of the consequences."

The Supreme Court has also recognized the profound mitigating weight that these characteristics deserve when considering any crimes committed by a teenager. See. Montgomery v. Louisiana, 577 U.S. ___(2016) (only in the rarest cases will the transient immaturity defining "youth fail to decisively mitigate against life imprisonment for murder) The Fair Sentencing For youth organization presents relevant evidence of the serious needs to review the long term sentencing of youth. In their article "The Need for Change" FSY discusses the problems with existing law including the fact that while the law tends to ignore youths' unique ability to change, FSY's research suggest otherwise: Youth can and do commit terrible crimes. When they do they should be held accountable and face appropriate punishment. but youth are different from adults; youth have greater capacity for rehabilitation. Recent findings in neuroscience confirms what many gave long known: Brain maturation is a process that continues into early adulthood and impulse control , planning, and thinking ahead skills in development well beyond into the 20's. . . . The Supreme Court agrees with FSY's assessment In Roper v.. Simmons, 543 U.S. 551 (2005)- the court opined: from a moral stand point it would be misguided to equate the failings of a minor with those of an adult for greater possibility exists that a minor's character deficiencies will be reformed. It is appropriate to proved youth with periodic reviews of their life sentences to ensure that those who prove they have reformed are given an opportunity to re-enter society as contributing citizens. The FSY article further indicates that 81% of the public agrees with these concepts. Moore was 21 years old (or younger) when the instant offense occurred. HIS IMPULSE CONTROL AND THINKING SKILLS WERE NOWHERE NEAR FULLY DEVELOPED AT THAT TIME.

Research confirms that cognitive maturity including such factors as abstract thinking moral intelligence,seeing how behavior

p.4
3

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B
--------------------------------------------------------------------------------

can affect the future, associating cause and effect, planning and decision- making, seeing what is not obvious, understanding the rules of social conduct , and mature judgment, does not occur until a young person is in is mid-twenties. (healthy Futures o, onmylevel.org) Due to Moore's youth and immaturity, he was particularly vulnerable to the negative influences of his environment, as well as those around him. . . .

A recent neuroscience study, "Jurisprudence on evolving standards of decency." the youthful mind and clearly demonstrates that the 18- year old cutoff date reference in Roper, Miller, and Graham is wrong as a matter of science and social norms.

Instead the study indicates that 21 years should be the cut off date. Interestingly that is the same age referenced in the First Step Act as defining a youth. IN Roper, Graham, Miller and Montgomery, the Supreme Court cited developments in neuroscience and social science that confirmed the common sense observation that young peoples' brains are different from adults brains in ways that make young people less morally responsible for their actions. In Roper the Court acknowledged that the qualities that distinguish juveniles from adults do not disappear when an individual turn 18. Id at 9. At that time the court reasoned that the scientific and social information available in 2005 made the age of 18 an appropriate place to draw the line, while acknowledging that any bright line rule would be open to criticism, and could later be changed as science and society evolved and gained more insight on the matter.

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

---

FROM: 30003018
TO:
SUBJECT: p3 reduction motion
DATE: 11/23/2023 08:01:15 AM

New research in neuroscience and brain development have made clear that the 18 year old cut off chosen in Roper and miller is too low: Development in Neuroscience confirm that impulsivity, a tendency to engage in high-risk behavior, a strong susceptibility to peer pressure, and a high degree of personality plasticity characterized people under 18 just as they characterized the juveniles described in Miller, Graham, and Roper. These Traits are the product of asynchronous neurological developments that are common to juveniles and people between 18 and 21: Although the brain's reward center are fully developed and primed for impulsive action, the region of the brain that regulate higher reasoning and emotional control remain immature. Put another way, the brains of people under 21, unlike adults' brains but like tanagers brains, are capable of triggering adult emotions but are not capable of managing or processing those emotions.

During the late teens and early 20's, a young person's brain is undergoing rapid changes in the areas of the brain most closely connected to impulsivity and decision-making. Specifically, recent neuroimaging studies show that the volume of white matter in the brain is relatively stable until around age 21, when it begins to increase dramatically. That is important white matter fibers transmit information between neurons allowing different regions of the brain to communicate with each other. In practice this means that the brains of people under 21 are poorly integrated, additionally, increased white matter in the front limbic system-- apart of the brain that is not fully developed until after age 21 enables individuals to modulate anxiety ,, deal with fear, and become socially adept. because of these developmental deficits people under 21 have difficulty generating appropriate responses to fear, envisioning the future and understanding consequences.

p.5

The brains of people under 21, like those of people under 18, also remain immature in three areas that support self control and emotion regulation: the amygdala, the prefrontal cortex,and ventral striatum. . . this makes young adults more vulnerable to impulsivity less capable of emotional reasoning and more likely to make errors in self regulation.

Specifically, recent studies show that people in their late teens and early 20's have a 'sensitivity to environmental factors interims of the stability of personality features during this phase' and a unique plasticity of character that fades as they reach their mid 20's these factors also means that people in their late teens and early 20's are uniquely susceptible to peer pressure. Id. at 11-14 there is no doubt that these findings have articulated a fact long suspected by researchers, but scientifically proven here. The brains of those in their late teens prior to the age of 21 are no

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

---

different than those of a juveniles from a developmental and culpability level. . ."

Similarly. MRI studies indicted that the brains of people in their late teens and early 20's lack the structural development that is necessary for higher level reasoning and emotional regulation." Id. at 13   It is now abundantly obvious that the time of the instant offense and at sentencing this defendant's brain was not yet fully developed - - - including when he obtained the charges as juvenile, that led to his career offender status, see. p.22 of Sent' Tr. (May 29, 2003).

This court is now empowered with the authority to correct the matter via this motion for sentence reduction- - - and defendant hereby prays that this court will utilize said power and opportunity to enable him to began a new life.

"STATUS POINTS"
_____

defendant hereby submit a request to have his "status points" i.e.. criminal history point reduced pursuant to amendments 821 (Nov. 1, 2023). Part A of said amendment addresses "status points" decreasing them by one for individuals with seven or more criminal history points nd eliminating status point for those with six or less criminal history.

Part B creates a new sect. 4c1.1 guideline that provides a decrease of two offense levels for "zero -point offenders" (no criminal history points) whose offense did not involve specific aggravating factors. The Amendment revises sect. 5c1.1 to provide guidance regarding the appropriateness of a sentence other than prison for certain first offenders as directed by U.S.C. Sect. 994(j). Part C amends the sect. 4A1.3 commentary to include prior marijuana possession sentences as an example of when a downward departure may be warranted for criminal history reasons.

p.6

Relevant to this defendant- - - as the court is aware, at sentencing defendant in 2003 he was given "status points" for being on "probation, parole" at the time of the instant offense. and defendant submits that if said "status points" is reduced it changes his category. Also the defendant has a state possession charge that no longer counts. At this time due to the restricted nature that the BOP places on viewing PSI Defendant cannot fully make out all the correct facts and would need the assistance of counsel.

Thus defendant request appointment of counsel and to have the probation department draw up a new proposed PSI under todays law.

:
:
:
:
:

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

----

UNUSUALLY LONG SENTENCE
--------

The "Unusually long sentence" provision recently released by the United States Sentencing Commission gives judges discretion after full consideration of the prisoner's individualized circumstance to determine whether a change in the law that would result in a lower sentence today could be a ground for sentence reduction. The person must have served at least ten years of an unusually long sentence and there must be gross disparity between the sentence being served and the one that would be imposed today. (change to the guidelines that are not made retroactive cannot be considered a change in the law for purposes of this ground.) To be sure this amendment build on the work of lawyers and judges around the country who identified novel but necessary extraordinary and compelling reason for sentence reduction. Their work inspired the commission to create new avenues to early release. U.S.S.G. 1B1.13(b)(6)

p.7

As this applies to Mr. Moore his 322 months sentence is unusually long based on the FSA change in law of the 851 enhancements. Today it would not apply because, inter alia, he only possessed the controlled substance in 1999-cocaine. Thus is maximum under 21 U.S.C. 841(b)(1)(c) would be 20 years not 30 years. e.g., See . United States v. Lii, Cr. No.06-00143 JMS(01),2021 U.S. Dist. Lexis 54401 (D. Haw. March 23, 2021) (granting the compassionate release motion due to non retroactive change in the 851 statute a change in law of the 851 his prior offense did not qualify as a serious drug offense because it was for possession of a control substance.) (The court stated that Lii was convicted of possession of 3.09 grams of cocaine, 0.06 grams of marijuana. . . None of these offenses qualifies as a "serious drug felony" they do not involve manufacturing, distributing, or intending to manufacture or distribute a controlled substance.)

Similarly, in this case possession of grams of cocaine base is not a qualify serious drug offense for the reasons stated supra.

Amendment 782
--------

Changes to the guideline that are retroactive applicable here Amendment 782 which went into effect on Nov.1, 2014 some 12 years after this defendant was sentenced. Said amendment lowered the base offense level in the drug quantity table by two levels across all drug types. U.S.S.G. app. C Amendment 782 (2014). See United States v Marello, 805 F. 3d 992,994-95 (11th Cir. 2015) (discussing the adoption of amendment 782) It applies retroactively USSG. App. C Amendment 782(2014) See Marello, 805 F.3d at 995 (noting retroactive applicability of amendment 782).

A district court may reduce a sentence where a defendant has been sentenced to a term of imprisonment based on a sentence range that has subsequently been lowered by the sentencing commission." 18 U.S.C. 3582(c)(2). The

7

Case 3:02-cr-00233-TJC-MCR   Document 143-3   Filed 01/08/24   Page 9 of 11 PageID 1383

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B
--------------------------------------------------------------------------------

sentencing commission policy statement governing sentence reduction under 3582(c)(2) is found at U.S.S.G. 1B1.10. To Be clear this defendant's sentence was never adjusted/lowered pursuant to Amendment 782 and if it's lowered pursuant to Amendment 782 his sentence that he is currently serving is grossly disparate" to a defendant sentence would be completed and he would have been released from custody by now- - - as his guideline range would have been changed.

p.8

Thus defendant is serving an "unusually long sentence and he has served at least ten years of said sentence and thereby respectfully moves this honorable court to re-sentenced him to time served. Moore has now chosen a road of self- betterment. In his pursuit of rehabilitation, he made very exceptional strides in bettering himself. He have completed numerous rehabilitative programs over his 20 more years of incarceration. See program sheet Exh. 2. This record of his can be considered extraordinary and compelling. More importantly Mr. Moore states that he is no longer 21 years old immature man who made irrational and irresponsible choices to engage in criminal conduct and that there is no concern that he would be a danger to the public if released because he is now 41 and rehabilitated. This is because he has learned respect for the rule of law in conjunction with his rehabilitation. See Lois M. Davis, etal. (Evaluating the effectiveness of correctional education: A meta Analysis of programs that provide education to incarcerated adults. Rand Corp. (2013).

In addition Mr. Moore submits that he is no longer a threat to the public safety and the conviction in this case is a deterrent from committing crimes for not only Moore, but others as well. In terms of both specific and general deterrence, there is overwhelming evidence in the scientific literature that the certainty of being caught is vastly more powerful deterrent than the severity of the punishment. United States v. Browning, 2021 U.S. Dist.. Lexis 38058 at *12-13 (E.D. Mich, March 2, 2021) (Quoting the findings made by the United States Department of Justice (DOJ) article entitled "Five things about deterrence" at 12-13 (2016)).

Moore has now been educated and has gained pro social skills that now gives him the confidence to approach professional people-- which he will have to do in order to fund and manage a non profit organization aimed at reaching at risk youth with education, and gang prevention ideas and techniques. Moore wants to build a positive legacy for himself in the community thru his outreach that his kids and grandkid will one day be able to attach themselves too and continue to aid the community's most vulnerable factors with needed assistance. If released he will make himself, his family, and the Judicial system proud of him by becoming a law abiding productive citizen in the community. He has reprogramed his mine to become positive and productive.

Based on all the stated reasons herein and other reasons that this court may find necessary, Mr. Moore respectfully

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

----------------------------------------------------------------------------------

request that his 322 month sentence be reduced to time served and or a reduction to a reasonable lesser sentence.

Executed on 2-4 2023 Respectfully submitted

_____
Algie Moore

p.9

TRULINCS 30003018 - MOORE, ALGIE - Unit: CAA-D-B

---

FROM: 30003018
TO:
SUBJECT: CERTIFICATE OF SERVICE
DATE: 11/22/2023 08:38:41 AM

CERTIFICATE OF SERVICE

I certify that on DEC. 4, 2023 I served a copy of sentence reduction motion under 3582(c)(1)(a); consolidated motion/memorandum in support of Motion for sentencing reduction; request for appointment of counsel; certificate of service and exhibits and attachment IN support, to the United States Attorneys office. 600 N. Hogan st Suite 700 Jacksonville FL 32202 by placing correct united states postage stamp on an envelope and giving mail to prison authorities for mailing.

Executed on DEC. 4, 2023

Algie Moore #30003018
USP Canaan
P.O. Box 300
Waymart PA 18472

p.10